1
2
3
4          UNITED STATES DISTRICT COURT
5          DISTRICT OF NEVADA
6          * * *
7   BANK OF AMERICA, N.A.,                    Case No. 2:16-CV-456 JCM (VCF)
8                              Plaintiff(s),                    ORDER
9        v.
10  MONTE BELLO HOMEOWNER'S
    ASSOCIATION, INC., et al.,
11
12                            Defendant(s).
13
14          Presently before the court is plaintiff Bank of America, N.A., successor by merger to BAC
15  Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing, LP's ("BANA") motion for
16  partial summary judgment. (ECF Nos. 36, 37). Defendant Monte Bello Homeowners Association,
17  Inc. (the "HOA") filed a response (ECF No. 38), to which BANA replied (ECF No. 47).
18          Also before the court is the HOA's motion for summary judgment (ECF No. 40), to which
19  defendant PBB & BPB Business Trust ("Business Trust") (ECF No. 42) joined. BANA filed a
20  response. (ECF No. 48).
21  **I.      Facts**
22          This case involves a dispute over real property located at 5124 Bellaria Place, Las Vegas,
23  Nevada (the "property"). On November 24, 2008, Deana Vanderlinden obtained a loan from
24  Stearns Lending, Inc. in the amount of $122,735.00, which was secured by a deed of trust recorded
25  on December 4, 2008. (ECF No. 1).
26          On April 21, 2010, defendant Angius & Terry Collections, LLC ("ATC"), acting on behalf
27  of the HOA, recorded a notice of delinquent assessment lien, stating an amount due of $1,393.64.
28  (ECF No. 1).

James C. Mahan
U.S. District Judge

1    The deed of trust was assigned to BAC Home Loans Servicing, LP f/k/a Countrywide

2    Home Loan Servicing LP ("BAC") via a corporation assignment of deed of trust recorded on April

3    30, 2010. (ECF No. 1).

4    On May 25, 2010, ATC recorded a notice of default and election to sell to satisfy the

5    delinquent assessment lien, stating an amount due of $2,267.52. (ECF No. 1).

6    On October 4, 2010, BANA allegedly requested a ledger from the HOA, through ATC,

7    identifying the superpriority amount owed to the HOA. (ECF No. 1). ATC allegedly refused to

8    identify the superpriority amount, and instead provided a ledger, dated October 11, 2010,

9    identifying the total amount allegedly owed. (ECF No. 1). BANA calculated the superpriority

10    amount as $657.00, the sum of nine-months of common assessments as identified in the HOA's

11    ledger, and allegedly tendered that amount to ATC on November 5, 2010. (ECF No. 1).

12    Effective July 1, 2011, BAC merged into BANA. (ECF No. 1).

13    On September 1, 2011, ATC recorded another notice of delinquent assessment lien, stating

14    an amount due of $4,160.00. (ECF No. 1). On December 30, 2011, ATC recorded a notice of

15    trustee's sale, scheduling the foreclosure sale for January 19, 2012, and stating an amount due of

16    $5,309.26. (ECF No. 1).

17    On January 19, 2012, ATC foreclosed upon the non-priority portion of the HOA's lien.

18    (ECF No. 36-9). The HOA purchased the property at the foreclosure sale for $2,099.75. (ECF

19    No. 1). A trustee's deed upon sale in favor of the HOA was recorded on January 25, 2012. (ECF

20    No. 1).

21    The HOA sold the property to Bellaria PI PBB Trust ("Bellaria") for $4,337.25 via a

22    quitclaim deed recorded on March 30, 2012. (ECF No. 1).

23    On March 2, 2016, BANA filed the underlying complaint, alleging four causes of action:

24    (1) quiet title/declaratory judgment against all defendants; (2) breach of NRS 116.1113 against

25    ATC and the HOA; (3) wrongful foreclosure against ATC and the HOA; and (4) injunctive relief

26    against Bellaria.[1] (ECF No. 1). On September 30, 2016, the court dismissed claims (2) and (3) of

27    BANA's complaint for failure to mediate. (ECF No. 28).

28

---

[1] Business Trust was substituted in place and stead of Bellaria. (ECF No. 14).

James C. Mahan
U.S. District Judge

- 2 -

1    In the instant motion, BANA moves for partial summary judgment (ECF No. 36) and the

2    HOA moves for summary judgment (ECF No. 40).  The court will address each as it sees fit.

3    **II.    Legal Standard**

4    The Federal Rules of Civil Procedure allow summary judgment when the pleadings,

5    depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

6    show that "there is no genuine dispute as to any material fact and the movant is entitled to a

7    judgment as a matter of law." Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment is

8    "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317,

9    323–24 (1986).

10    For purposes of summary judgment, disputed factual issues should be construed in favor

11    of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990).  However, to be

12    entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts

13    showing that there is a genuine issue for trial." *Id.*

14    In determining summary judgment, a court applies a burden-shifting analysis.  The moving

15    party must first satisfy its initial burden.  "When the party moving for summary judgment would

16    bear the burden of proof at trial, it must come forward with evidence which would entitle it to a

17    directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has

18    the initial burden of establishing the absence of a genuine issue of fact on each issue material to

19    its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000)

20    (citations omitted).

21    By contrast, when the nonmoving party bears the burden of proving the claim or defense,

22    the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential

23    element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed

24    to make a showing sufficient to establish an element essential to that party's case on which that

25    party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving

26    party fails to meet its initial burden, summary judgment must be denied and the court need not

27    consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–

28    60 (1970).

**James C. Mahan**
**U.S. District Judge**

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III.    Discussion[2]

As an initial matter, the court dismisses, without prejudice, claim (4) of BANA's complaint (ECF No. 1) as the court follows the well-settled rule in that a claim for "injunctive relief" standing alone is not a cause of action. *See, e.g.*, *In re Wal–Mart Wage & Hour Emp't Practices Litig.*, 490 F. Supp. 2d 1091, 1130 (D. Nev. 2007); *Tillman v. Quality Loan Serv. Corp.*, No. 2:12-CV-346 JCM RJJ, 2012 WL 1279939, at *3 (D. Nev. Apr. 13, 2012) (finding that "injunctive relief is a remedy, not an independent cause of action"); *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp.

---

[2] The 2015 Legislature revised Chapter 116 substantially. 2015 Nev. Stat., ch. 266. Except where otherwise indicated, the references in this order to statutes codified in NRS Chapter 116 are to the version of the statutes in effect in 2010–12, when the events giving rise to this litigation occurred.

1    2d 1183, 1201 (E.D. Cal. 2010) ("A request for injunctive relief by itself does not state a cause of

2    action.").

3          Further, the court takes judicial notice of the following recorded documents: first deed of

4    trust (ECF No. 36-1); notice of delinquent assessment (ECF No. 36-4); notice of default and

5    election to sell (ECF No. 36-5); notice of trustee's sale (ECF No. 36-7); trustee's deed upon sale

6    (ECF No. 36-9); quitclaim deed (ECF No. 36-11); and assignment of deed of trust (ECF No. 36-

7    3). *See, e.g.*, *United States v. Corinthian Colls.*, 655 F.3d 984, 998–99 (9th Cir. 2011) (holding

8    that a court may take judicial notice of public records if the facts noticed are not subject to

9    reasonable dispute); *Intri-Plex Tech., Inv. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).

10         In its motion, BANA moves for partial summary judgment on its quiet title/declaratory

11   judgment claim against the HOA and Business Trust.  (ECF No. 36).  BANA argues that the

12   trustee's deed upon sale expressly states that the foreclosure "sale encompassed only the 'non-

13   priority' portion of [the HOA's] lien."  (ECF No. 36 at 1–2).  BANA thus maintains that its deed

14   of trust continues to encumber the property.  (ECF No. 36).

15         In its response, the HOA asserts that "[a]t the foreclosure sale, ATC, without the [HOA's]

16   knowledge, announced that the [HOA] was not foreclosing on the superpriority portion of its [l]ien,

17   only the subpriority portion."  (ECF No. 38 at 2).

18         Under Nevada law, "[a]n action may be brought by any person against another who claims

19   an estate or interest in real property, adverse to the person bringing the action for the purpose of

20   determining such adverse claim."  Nev. Rev. Stat. § 40.010.  "A plea to quiet title does not require

21   any particular elements, but each party must plead and prove his or her own claim to the property

22   in question and a plaintiff's right to relief therefore depends on superiority of title."  *Chapman v.*

23   *Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (citations and internal quotation

24   marks omitted).  Therefore, for plaintiff to succeed on its quiet title action, it needs to show that

25   its claim to the property is superior to all others.  *See also Breliant v. Preferred Equities Corp.*,

26   918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff

27   to prove good title in himself.").

28

James C. Mahan
U.S. District Judge

Section 116.3116(1) of the Nevada Revised Statutes gives an HOA a lien on its homeowners' residences for unpaid assessments and fines; moreover, NRS 116.3116(2) gives priority to that HOA lien over all other liens and encumbrances with limited exceptions—such as "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b).

The statute then carves out a partial exception to subparagraph (2)(b)'s exception for first security interests. *See* Nev. Rev. Stat. § 116.3116(2). In *SFR Investment Pool 1 v. U.S. Bank*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

Chapter 116 of the Nevada Revised Statutes permits an HOA to enforce its superpriority lien by nonjudicial foreclosure sale. *Id*. at 415. Thus, "NRS 116.3116(2) provides an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

In the present case, the trustee's deed upon sale in favor of the HOA clearly states that ATC, as the HOA's agent, was granting and conveying the "portion of its right, title and interest secured by the ***non-priority portion of its lien*** under NRS 116.3116." (ECF No. 36-9) (emphasis added). Because the foreclosure sale did not foreclose on the superpriority portion of the HOA's lien, the foreclosure sale did not extinguish the first deed of trust. Therefore, BANA's first deed of trust continues to encumber the property (*i.e.*, the trustee's deed upon sale in favor of the HOA (ECF No. 36-9), as well as the quitclaim deed in favor of Bellaria (ECF No. 36-11)).

In light of the foregoing, BANA has sufficiently demonstrated that it is entitled to judgment as a matter of law on its quiet title/declaratory relief claim against the HOA and Business Trust. BANA has shown that its interest (*i.e.*, the deed of trust) in the property is superior to that of the HOA's interest (*i.e.*, the trustee's deed upon sale in favor of the HOA) and Business

**James C. Mahan**
**U.S. District Judge**

1    Trust's/Bellaria's interest (*i.e.*, the quitclaim deed in favor of Bellaria) because the foreclosure sale

2    did not foreclosure on the superiority portion of the HOA's lien so as to extinguish the deed of

3    trust.

4        Further, the HOA has failed to raise a genuine issue of material fact to withstand summary

5    judgment in BANA's favor.  The HOA merely asserts that ATC foreclosed on the subpriority

6    portion of its lien without the HOA's knowledge.  However, the HOA knew or should have known

7    that the foreclosure sale foreclosed on the non-priority portion of the HOA's lien—not the

8    superpriority portion of the HOA's lien—because the trustee's deed upon sale in favor of the HOA

9    clearly stated so.  Furthermore, the HOA does not assert that the foreclosure sale erroneously

10   foreclosed on the subpriority portion, rather than the superpriority portion, of its lien.  Instead, the

11   majority of the HOA's response argues that the foreclosure sale was valid.

12       Accordingly, the court will grant BANA's motion for partial summary judgment (ECF No.

13   36) and deny the HOA's motion for summary judgment (ECF No. 40).  BANA has shown that it

14   is entitled to judgment as a matter of law on its quiet title claim against the HOA and Business

15   Trust/Bellaria and that the HOA and Business Trust/Bellaria purchased the property subject to

16   BANA's senior deed of trust.

17   **IV.   Conclusion**

18       Accordingly,

19       IT IS HEREBY ORDERED, ADJUDGED, and DECREED that BANA's motion for

20   partial summary judgment (ECF No. 36) be, and the same hereby is, GRANTED.

21       IT IS FURTHER ORDERED that the HOA's motion for summary judgment (ECF No. 40)

22   be, and the same hereby is, DENIED.

23       The clerk shall enter judgment accordingly and close the case.

24       DATED July 13, 2017.

25   _____
        UNITED STATES DISTRICT JUDGE
26

27

28

James C. Mahan
U.S. District Judge